Niria M. Arvizu, Esq., [SBN 236994]
arvizu@ipcounsel.us
301 E. Colorado, Blvd., Suite 705
Pasadena, CA 91101
Telephone No.: 626.831.8077

Attorneys for Plaintiff,
Wonderfold Corporation

UNITED STATES DISTRICT COURT

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WONDERFOLD CORPORATION, a California Corporation.<br><br>         Plaintiff,<br><br>    vs.<br><br>HIGHLINK TRADE LIMITED, a Hong Kong, China Corporation, OMNIFAMILY INC., a California Corporation, OMNIHOME INC., a New Jersey Corporation, and DOES 1-5 inclusive,<br><br>         Defendants. | Case No.: 2:24-cv-3280<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>JURY TRIAL DEMANDED |

Plaintiff, Wonderfold Corporation, (hereinafter "Wonderfold") for its Complaint against Defendants, Omnifamily Inc., a California Corporation, ("Omnifamily"), Omnihome, a New Jersey Corporation, ("Omnihome"), and Highlink Trade Limited, a Hong Kong Corporation ("Highlink", collectively, "Defendants"), states and alleges the following:

## **NATURE OF THE ACTION**

1.    This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the common law of trademark infringement, misappropriation, and unfair competition.

2.    Defendants have infringed and continue to infringe, and have induced and continue to induce infringement of, one or more claims of Plaintiff's U.S. Patent No. 10,464,588 ("the '588 patent") and U.S. Patent No. D955,301 ("the '301 patent"), and the protected design elements of the stroller of Wonderfold, at least by importing, selling and offering to sell the Joymor stroller.

3.    Wonderfold is the exclusive licensee and assignee of all rights to all causes of action and remedies arising under the '588 patent and the '301 patent, and the owner of the trademark design of the stroller of Wonderfold in the United States, which was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks injunctive relief and monetary remedies.

## **JURISDICTION AND VENUE**

4.    This is a civil action for patent infringement arising under patent laws of the United States, 35 U.S.C. § 1 *et seq.,* and for trademark infringement arising under the Lanham Act, 15 U.S.C. §1125(a) and unfair competition.

5.    This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331, 1332 and 1338(a) and 15 U.S.C. § 1125(a) because this action arises under the trademark and patent laws of the United States, there is a diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

6.    Defendants are subject to this Court's personal jurisdiction for one or more of the following reasons:

a.    Defendants have infringed the '588 patent, the '301 patent and the trademark in this District by, among other things, engaging in infringing conduct within and directed at or from this District. For example, Defendants have purposefully availed and voluntarily placed the Joymor stroller into the stream of commerce with the expectation that these infringing products will be used in this District.

b.    Defendants have done and continue to do business in the State of California and with one or more residents of the State of California, including in this District;

c.    Defendants direct into the State of California, including in this District, commerce, good and services, and advertising, including by mail, electronic communications and other means;

d.    Defendants have entered into contracts with one or more residents of the State of California to supply products or services within the State of California, including in this District;

e.    Defendants have offered and continue to offer, products constituting patent and trademark infringement and services relating to this complaint in the State of California including in this District;

f.    Defendants have made substantial sales and shipments of infringing goods within the State of California, including in this District;

g.    These infringing products have been and continue to be sold and used in this District;

h.    Defendants maintain warranty services, such as those referenced at its website, www.joymor.com/pages/product-registration, on infringing products within the State of California, including in this District;

i.    In addition, defendant Omnifamily is organized within the State of California with a principal place of business in this District.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because Defendants have committed acts of infringement in this District, because Defendants have transacted and continue to transact business within this District, have sold and continue to offer for sale services and products within this district which are a substantial part of the events giving rise to this action. In addition, venue is proper because Defendant Omnifamily's principal place of business is in this District, and Wonderfold has suffered and is suffering harm in this District.

## **THE PARTIES**

8.      Wonderfold is a corporation organized and existing under the laws of the State of California with its principal place of business at 5796 Martin Road, Irwindale, California 91706 and is in the business of marketing and selling strollers.

9.      Upon information and belief, OMNIFAMILY INC is a corporation organized and existing under the laws of the State of California with a principal place of business at 14310 Ramona Ave, Chino, CA 91710, and is in the business of researching, designing, developing, manufacturing, marketing, and selling children's toys, furniture and strollers at low prices, accessories, and components of those products and accessories for importation into the United States, and with sales in the United States, including in this District, and with a principal place of business in this District.

10.     Upon information and belief, OMNIHOME, INC., is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 52 Bridge Street, Suite B, Metuchen, New Jersey 18840, and is in the business of researching, designing, developing, manufacturing, marketing, and selling children's toys, furniture and strollers at low prices, accessories, and components of those products and accessories for importation

into the United States, and with sales in the United States, including in this District.

11.    Upon information and belief, HIGHLINK TRADE LIMITED, is a corporation organized and existing under the laws of Hong Kong with a principal place of business at 2-16 Fa Yuen St Rm 18 27/F Ho King Comm Ctr, Mongkok, KL Hong Kong 999077, China, and is in the business of researching, designing, developing, manufacturing, marketing, and selling children's toys, furniture and strollers at low prices, accessories, and components of those products and accessories for importation into the United States, and with sales in the United States, including in this District.

12.    Upon information and belief, defendants directly and or indirectly import, develop, design, manufacture, distribute, market, offer to sell and/or sell infringing products and services in the United States, including in the Central District of California, and otherwise purposefully directs infringing activities to this district in connection with the Joymor stroller.

13.    Upon information and belief, Defendants and defendant Does 1-5, have been and are acting in concert, and are otherwise liable jointly, severally or otherwise for a right to relief related to or arising out of the same transaction, occurrence or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling the Joymor stroller in this District. In addition, this action involves questions of law and fact that are common to all Defendants.

## HISTORY OF THE STROLLER OF WONDERFOLD

14.    Wonderfold is currently and for years has been the leading manufacturer of stroller wagons for children. At least as early as 2019, Wonderfold 2019 has designed, manufactured, marketed and sold innovative stroller to customers that would assist in carrying all the essentials for toddlers

and young children, have the safety and function to be able to carry toddlers and young children, have the convenience of being collapsible, foldable, and have an appealing and distinctive three dimensional shaped design came to signify the quality and reputation of Wonderfold strollers early in the company's history; and such use has been continuous and exclusive since at least as early as 2019.

15.    As a pioneer in the creation and innovation of stroller wagons, Wonderfold launched a line of stroller wagons intended for children six months and older. Wonderfold is known for their reliability, ease-of-use, and innovative industrial design. Wonderfold's team has integrated the functionality of a foldable stroller with a three-dimensional shaped design that is appealing and enjoyable for children and caregivers.

16.    Wonderfold is owner of the stylized mark, "Wonderfold" in Class 12 for strollers and related items, U.S. Registration No. 5,977,081, (the "081 Mark") and the word mark, "Wonderfold" in class 12 for strollers and related items and class 20, U.S. Registration No. 5,956,667, (the "667 Mark") (collectively, the "Wonderfold Marks"). A true and correct copy of the '081 Mark is attached hereto as Exhibit 1. A true and correct copy of the '667 Mark is attached hereto as Exhibit 2.

17.    New Century Products Limited filed for patent protection on its innovations, and currently holds multiple patents in the US, Taiwan, and Japan, relating to baby carriages, a foldable storage bag, and multi-purpose chairs. The '588 patent, granted by the United States Patent and Trademark Office on November 5, 2019, is entitled "Foldable Baby Stroller", has remained in force since that time and continues to be in force.

18.    On June 21, 2022, United States Design Patent No. D955,301 titled "Stroller" of New Century Products Limited, was duly and legally issued by the

United States Patent and Trademark Office. The '301 patent has remained in force since that time and continues to be in force.

19.    Wonderfold is the exclusive licensee of the '588 patent, and the '301 patent with all substantial rights in and to the '588 patent and the '301 patent, and was assigned all rights to all causes of action and remedies arising under the '588 patent and the '301 patent in the United States. A true and correct copy of the '588 patent is attached hereto as Exhibit 3. A true and correct copy of the '301 patent is attached hereto as Exhibit 4.

20.    The '301 patent covers an ornamental design for a stroller. Wonderfold has practiced the '301 patent in connection with the commercialization with the Wonderfold strollers and services, as shown for example in the side-by-side comparison below:

| Figure 1 of '301 patent | Joymor Manual Front Cover |
| --- | --- |
|  |  |

21.    Wonderfold has invested substantial, time, effort and financial resources in developing and promoting its stroller design and stroller of the '301 patent and the '588 patent and has spent approximately $13 million in extensive promotion alone and in a variety of media throughout the United States, including, but not limited to, product labeling and packaging, brochures, point of purchase display materials, signage, trade magazine advertisements, trade show displays and, on the web, to distinguish its products and services from those offered by others.

22.    The Wonderfold stroller is sold in high-end department stores such as Saks Fifth Avenue, Bloomingdales, and Nordstrom, and where some of which are sold for $1,599.00 and is found in approximately 1,500 retail stores including 100 brick-and-mortar stores such as Macy's, Dick's Sporting Goods, and Sam's Club and approximately 308,000 units of the Wonderfold stroller were sold thus far.

23.    The designs associated with the strollers of Wonderfold have become an asset of substantial value and a symbol of Wonderfold's quality products, services, and goodwill. The designs associated with the stroller of Wonderfold are inherently distinctive and have acquired secondary meaning through Wonderfold's long-term, widespread, and continuous use of its designs associated with the Wonderfold stroller in commerce.

24.    Strollers manufactured and sold by Wonderfold are specifically designed to provide a unique stroller, distinctive from other strollers. Consumers, retail providers, and others associate the three-dimensional shaped design of the Wonderfold stroller with Wonderfold, as such stroller designs visually set Wonderfold's products and services apart from those of its competitors.

25.    The design of the Wonderfold stroller is well-known and famous. Wonderfold has used the design of the stroller in connection with its advertising and design collaborations with celebrities such as Kim Kardashian and Chrissie

Teigen and has enjoyed unsolicited media coverage where celebrities such as Kim
Kardashian Khloe Kardashian, Kevin Hart, Chrissie Teigen, and Joe Jonas have
been the subject of celebrity news for using the strollers of Wonderfold.

26.     The image below is of a Wonderfold stroller designed in collaboration
between Wonderfold and Kim Kardashian and bearing the personal logo of Kim
Kardashian:



Print screen taken from article at Buzzfeednews.com, link at
https://www.buzzfeednews.com/article/stephaniesoteriou/kim-khloe-
kardashian-disneyland-rides-cutting-line and last accessed on April 19, 2024.

27.     See also below image taken from Kylie Jenner's Instagram account of
her child in a Wonderfold stroller:

.

Link                                                                                at https://www.instagram.com/p/CoIFMR5JoqE/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=5, see fifth photo on post, and last accessed on April 19, 2024. As of April 19, 2024, Kylie Jenner had 400 million followers.

28.    See also Instagram post of Chrissy Teigen in her Wonderfold stroller:



https://www.instagram.com/p/Cw8byO4ybdJ/?utm_source=ig_web_copy_link
&igsh=MzRlODBiNWFlZA%3D%3D&img_index=1, last accessed on April 19,
2024. As of April 19, 2024, Chrissy Teigen had 42.6 million followers.

29.    Without solicitation, Consumers have dedicated a multitude of
internet platforms for the sole discussion of Wonderfold strollers. For example,
without the solicitation of Wonderfold:

a.    a mom on Facebook created a group "for people to discuss
Wonderfold wagons", at link:

https://www.facebook.com/groups/456820231549640/permalink/1460755311156122/, last accessed on April 19, 2024;

b.    a group was created on Instagram and is described as "Just two Mamas obsessed with all things Wonderfold!" and use the below Wonderfold stroller design icon as their profile photo:



at link: https://www.instagram.com/wonderfoldmamas/, last accessed on April 19, 2024; and

c.    a Facebook group was created to advertise accessories they make for the                Wonderfold                stroller,                at                link: https://www.facebook.com/groups/811445196547009/permalink/970360117322182/?mibextid=oFDknk&rdid=6KEr3Q1tuV4npaal, last accessed on April 19, 2024.

30.    A stroller, designed in the shape of a 3D rectangle with panels that raise above the front and back ends of the 3D rectangular shape, side-by-side vertical rectangle-shaped designs on the left and right side of the stroller shape separated and outlined by a thin solid upright rectangle design, two translucent side-by-side panels on the two vertical rectangle-shapes on the left and right side of the stroller, two seats for children appear to float inside the stroller, stroller seats where the seat backs protrude above the rectangle shape and where the seat bottoms are raised above the lower portion of the 3D rectangle shape, a flap with a vertical rectangular shape with rounded corners on the lower portion of the flap

that hangs over the left and right side of the stroller, a design with three panels of vertical rectangles with the outer two vertical rectangles in translucent material and the middle pattern in solid fabric on the lower portion of a removable basket on the back of the stroller, a crescent shaped flap over the front pocket of the stroller, an overhead canopy with distinctive rounded edges, a distinctive three-ridge design on the clips for the child seats for the stroller, a distinctive three-ridge design on the clips for accessories for the stroller, a distinctive shape when the stroller is folded and with the center flap with a distinctive rectangular design positioned to hang over the edge of the uppermost portion of the folded stroller, a distinctive capsule-shape for the padding for the harness for the child seats, a distinctive design containing a multiplicity of interconnecting boat-shapes on the tread of the wheels, two distinctive curves near the insertion point on the folding latch, handlebar button where the outer facing cover for the button is shaped in a distinctive square where the lines of the square curve outward, where the button for the handlebar is on the inside of the handlebar and is rounded and with an indented circle in the center, and where these purely aesthetic, non-functional stroller designs, or a combination thereof are recognized by consumers as the Wonderfold stroller. The first image below showing the child seat for the stroller and the second image below showing the stroller with the child seat installed.




31.    The shapes and lines of the protected design of the Wonderfold stroller are purely aesthetic, not functional, and not essential for the purpose of the stroller, to transport children, and do not affect the quality or, make the stroller of Wonderfold more or less expensive to manufacture or sell. The design of the Wonderfold stroller is not essential to its use or purpose, and there are a multitude of ways in which a child may be transported in a stroller, and which do not require the design of the Wonderfold stroller.

32.    Wonderfold emphasizes and stresses the elements of the design of the stroller. Below are drawings created by Wonderfold for the marketing of the Wonderfold stroller that emphasize the elements of the stroller of Wonderfold:








33.    Wonderfold uses the following drawings adjacent to photos of the stroller of Wonderfold in its advertising, as shown below on the main page of its webpage; the drawing circled below in red:

.

See enlarged drawing below:

.

Screenshots taken from website at https://wonderfold.com/ and last accessed on April 19, 2024.

34.   Below is a screenshot of how retailers use the drawings of Wonderfold the emphasize the elements of the trademark design of the stroller of Wonderfold:



See enlarged drawings below:



Screenshot taken from https://www.amazon.com/WONDERFOLD-Multi-Function-Passenger-Adjustable-Reclining/dp/B09KZFDCS8/ref=sr_1_2?crid=2IT0M55Q13OI3&dib=eyJ2IjoiMSJ9.f2sULB0iC45dyrmrhqpDhYyYo9TZKPyYjDI6hbaTJh3BD3Y3JrOo9A4X8DaKwGOKVcyL7uAj_rRCdmrWrUEzJm8I4oPiQG7ekhoV9zWbLlYRJOH_uR6qHl

RE_U9YY9zLJNIyVMttTI51ah2OibVRNqZNIGWmcK_zSTh5Y5CjKc4FkKuEaIlxYo5V8PzpCmhv5ncFwAJyYyjZz50J2_pher2SHDfpq6tE55SeDIH6QL8.cEXGvsZc6BDh3bqpjffYBMMPGLgYXk8jW6J1rUqaBM0&dib_tag=se&keywords=wonderwagon&qid=1713557452&sprefix=wonderwagon%2Caps%2C132&sr=8-2 last accessed on April 19, 2024.

35.   Third parties besides Defendants have also copied the design of the Wonderfold stroller, see below advertisement of yet another copycat stroller:



See link at: https://www.walmart.com/ip/Ktaxon-Stroller-Wagon-for-2-Kids-Featuring-2-High-Face-to-Face-Seats-with-5-Point-Harnesses-Removable-UV-Protection-Canopy-Black/3515283584?adsRedirect=true. Link last accessed on 4.9.24.

36.   As a result of result of the substantial advertising and promotional efforts of Wonderfold, as well as the high quality of the products and services associated with the stroller design of the '301 patent and Wonderfold's line of strollers, such distinctive stroller design has earned valuable and residual goodwill and reputation for Wonderfold being the sole source for such goods and services in the United States.

1

**ACTS GIVING RISE TO THE ACTION**

2

37.    In recognition of the commercial success of the stroller of the '588

3

and '301 patents, and the inherently distinctive design of the Wonderfold line of

4

strollers, in 2022, Defendants, Omnifamily, Omnihome, and Highlink began

5

marketing and selling a foldable stroller in direct competition with Wonderfold,

6

which copies exactly all of the patented and distinctive designs of the stroller of

7

Wonderfold, and which Defendants identify as the Joymor stroller and advertise

8

as "the wonderfold exact dupe", at a fraction of the price of the Wonderfold

9

stroller, and further boast the Joymor stroller "fits all the accessories from the

10

wonderfold" stroller, as shown below:

11

12



13

14

15

16

17

18

19

20

21

22

The following a closer look at the description above from Defendants'

23

Instagram page:

24

25

26

27

28



38.     The following a further example of Defendants' advertising on their Instagram page, the Joymor stroller as the "stroller dupe" of Wonderfold:



39.     The following from a customer of Defendants identifying the Joymor stroller as the Wonderfold "perfect dupe":



Screenshot of Defendants website advertising the Joymor stroller taken on April 19, 2024 at https://www.joymor.com/products/joymor-stroller-wagon-for-4-kids-luxury-4-seater-wagon-stroller-features-rubber-wheel-5-point-harnesses-double-side-handles-adjustable-removable-uv-protection-canopy.

40. See also below screenshots from reviews of Joymor's stroller taken from Joymor's website, www.joymor.com:

COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    41.    The sale and advertising of the Joymor stroller has caused consumer
19    confusion; as shown below, the post asks for discounts on Wonderfold strollers
20    and the response references Joymor strollers:
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      42.     The following customer describes their relative wanted a Wonderfold

17  stroller and when asked which model they purchased, sent a description of a

18  Joymor stroller, see below:

19
20
21
22
23
24
25
26
27
28

## Group posts

 **WonderFold Wagon BST & Family Chat Group**    • • •

**Lane Warner** · Nov 7, 2023 · 😬

My MIL was so excited and told me she bought my sister in law a wagon like ours. I am planning on getting them accessories for Christmas.

Today I asked which model she bought and she sent me the JOYMOR brand from Amazon 😅 does anyone have this and do you know if the rain cover or snack tray will work with it??

**View insights**                    8.8K Post Reach

😂👍 8                                      41 comments

The above screenshot taken from link at https://www.facebook.com/share/p/ig3Z8fKzhmJaqfHS/?mibextid=oFDknk. Link last accessed on April 19, 2024.

    43.    The following customer was confused about Joymor and stated "it appears to be a rebranded wonderfold":

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



Screenshot above taken from link at: https://www.facebook.com/share/p/WHpyPKe7PybijAry/?mibextid=oFDknk. Link last accessed on April 19, 2024.

23   44.   The following customer was confused when, on a social media
24  platform designated for strollers of Wonderfold, she posted a photo of her Joymor
25  stroller:

26
27
28



45.    The following consumer was confused where he posted a video on www.Youtube.com, titled "JOYMOR 4 seater wagon is a WONDERFOLD W4 Luxe", and Joymor uses that video on its website. See below screenshot of customer's video on Joymor's website:

1

2

3

4

5

6

7

8

9

10



11

12  Link to Joymor website using customer's video:

13  https://www.joymor.com/collections/stroller-wagon/products/joymor-stroller-

14  wagon-for-4-kids-luxury-4-seater-wagon-stroller-features-rubber-wheel-5-point-

15  harnesses-double-side-handles-adjustable-removable-uv-protection-

16  canopy?_pos=2&_sid=ef8027efd&_ss=r.

17  Link last accessed April 19, 2024.

18      46.    Defendants sell the Joymor stroller at a fraction of the cost of the

19  Wonderfold stroller, and, in further efforts to trade off the goodwill of the

20  Wonderfold stroller, use the Wonderfold registered trademarks in hashtags, i.e.,

21  #wonderfoldwagon to draw Wonderfold customers to the Joymor stroller:

22

23

24

25  

26

27

28      a.

See close-up



From link at https://www.instagram.com/p/CzI6B51tl-v/, last accessed on April

19, 2024; and

b.



See close up:

From link at https://www.instagram.com/p/Cza6mFhh_Fo/, last accessed on April 19, 2024.

47.    Based on information and belief, the quality of the Joymor stroller is sub-par, as it fails to meet safety standards and regulations, including, but not limited to: failing to provide a suffocation warning on the plastic packaging containing parts and accessories for the Joymor stroller despite being marketed as a children's product; incorporating a middle bar for supporting the front seat that poses a risk of finger pinching for toddlers seated in the rear; failing to provide registration numbers, distribution information, and date of delivery on stroller labels, and tracking information which are required, in part, in order to assure tracking in the event of product recalls; marketing the Joymor stroller for use by children 0-36 months despite not being tested for those standards, and advertising the use of the stroller in unsafe ways, and such acts are causing damage to the goodwill and reputation of Wonderfold.

48.    See below image of Joymor stroller advertised by Joymor as safe for use for children as a bassinet, for which it is not safety approved.



49.  See below image of Joymor stroller using seat positions that are dangerous for children, i.e., unsafe to attach the seat onto the handlebars and to attach the seats inside the wagon positions facing in the same direction:

50.    In addition, in its operating manual for its strollers, the Joymor manual publishes photographs substantially similar to, or the same as photographs used in the Wonderfold operating manual for its strollers, and the entire manual is substantially similar to the operating manual of Wonderfold for its strollers.

51.    Defendants copied the stroller design from the stroller design of the '301 patent and the stroller of the '588 patent and the distinctive design of Wonderfold's line of strollers.

52.    The stroller design of Defendant's stroller is the same or substantially the same as the stroller design of the '301 patent and Wonderfold's line of strollers. The stroller designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase Defendants' products believing them to be substantially the same as the '301 patent.

53.    In spite of the rights of Wonderfold, Defendants willfuly and knowingly infringed Wonderfold's rights, including as to the '588 patent and the '301 patent.

54.    Defendants copied the stroller of the '588 patent and the stroller design of the '301 patent. A side-by-side comparison of the '301 patented design and exemplary specimens of the Wonderfold stroller and the Joymor stroller are shown below, the photograph of the Joymor stroller being taken from the website of Defendants advertising and offering for sale the Joymor:

| Figure 1 of '301 patent | Wonderfold Stroller | Joymor Stroller |
|---|---|---|
|  |  |  |

55.    As shown in the photos, the Joymor stroller has a design that is the same or substantially the same Wonderfold stroller. The stroller designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchase usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase Wonderfold's products believing them to be substantially the same as the stroller design protected by the '301 patent.

56.    Wonderfold has not granted any license or any authorization to Defendants to make, use, offer for sale, sell, or import strollers that embody the stroller design patented in the '301 patent and which is proprietary to Wonderfold.

57.    In spite of the rights of Wonderfold, Defendants willfully and knowingly infringed the rights of Wonderfold, including as to the '301 patent and the '588 patent and trade dress of the stroller of Wonderfold. Further, Defendants committed wrongful acts that constitute unfair and deceptive trade practices in relation to the Joymor stroller and the stroller design and services related to the Joymor stroller.

58.    Wonderfold has been damaged by the foregoing infringing and wrongful acts of Highlink, including, but without limitation, suffering actual damages.

59.    By manufacturing and selling the Joymor strollers with a stroller design that is the same as, or substantially similar to, Wonderfold's unique and distinctive stroller design from Wonderfold's stroller protected by the '588 patent and the stroller design protected by the '301 patent, Joymor willfully and knowingly caused a likelihood of confusion or misunderstanding as to, *inter alia*, the sponsorship and approval of the Joymor products and services being offered and sold by Defendants. Such wrongful conduct also caused a likelihood of confusion or misunderstanding as to the affiliation, connection, or association of the Joymor products and services with Wonderfold.

60.    Defendants encouraged consumers to believe that the Defendants' products and services were sponsored, approved or sold in affiliation, connection or association with Wonderfold despite knowing of Wonderfold's rights. Defendants' wrongful actions and practices in connection with the Joymor products and services were deceptive to consumers and others including Wonderfold.

61.    Defendants' wrongful conduct and activities will continue unless enjoined by this Court.

## COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 10,464,588

62.    Wonderfold incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

63.    Defendants have directly infringed and is currently directly infringing the '588 patent my making, using, selling, offering for sale, and/or importing into the United States, without authority, products and equipment that embody one

or more claims of the '588 patent, including but not limited to the Joymor stroller.

64.     As just one non-limiting example, set forth below (with claim language in italics) is a description of infringement of exemplary claim 1 of the '588 patent in connection with the Joymor stroller. This description is based on publicly available information. Wonderfold reserves the right to modify this description, including, for example, on the basis of information about the Joymor stroller that it obtains during discovery.

*A foldable baby stroller, comprising:* The Joymor stroller is a combination of the claimed elements, as described below.

1(a) *a front wheel assembly, comprising a front wheel holder, a front-left wheel and a front-right wheel disposed at the bottom of the front wheel holder;* The Joymor stroller includes a front wheel holder, a left-wheel holder and a right wheel holder at the bottom of the front-wheel holder as indicated below and using photographs from the manual for the Joymor stroller:



1(b) *a rear wheel assembly, comprising a rear wheel holder, a rear-left wheel and a rear-right wheel disposed at the bottom of the rear wheel holder, wherein the rear wheel holder is inverted U-shaped, connected to a push rod and the push rod extends from a rear side of the rear wheel holder*; The Joymor stroller includes a rear wheel assembly, comprising a rear wheel holder, a rear-left wheel and a rear-right wheel disposed at the bottom of the rear wheel holder, wherein the rear wheel holder is inverted U-shaped, connected to a push rod and the push rod extends from a rear side of the rear wheel holder;



//

/

/

//

1(c) *a folding assembly, comprising two lateral folding holders disposed at a right side and a rear side thereof respectively, wherein each lateral folding holder comprises an upper-front fence tube, a lower-front fence tube, an upper-back fence tube, a lower-back fence tube and a middle holder;* The Joymor stroller includes a rear-wheel assembly, made of two lateral folding holders disposed at a right side and a rear side where each lateral folding holder comprises an upper-front, lower-front, and upper-back fence tube, a lower-back fence tube and a middle holder as indicated below and using photographs from the manual for the Joymor stroller:



//

/

//



/

1 (d) *the upper-front fence tube and the upper-back fence tube are disposed in front of and adjacent to the lower-front fence tube and the lower-back fence tube respectively;* The Joymor stroller has an upper-front fence tube and upper-back fence tube that are disposed of in front of and adjacent to the lower front fence tube and the lower back fence tube respectively as indicated below and using photographs from the manual for the Joymor stroller:



//

/

//

/

//

/

1(e) *the middle holder comprises an upper folding joint, a lower folding joint and a support stand rod disposed therebetween and connecting the upper folding joint to the lower folding joint;* The Joymor stroller's upper middle holder comprises an upper folding joint, a lower folding joint and a support stand rod disposed therebetween and connecting the upper folding joint to the lower folding joint as indicated below and using photographs from the manual for the Joymor stroller:



//
/
/

1 (f) *the upper folding joint is disposed in front of and adjacent to the lower folding joint*; The upper folding joint of the Joymor stroller is disposed in front of and adjacent to the lower folding joint as indicated below and using photographs from the manual for the Joymor stroller:



1 (g) *front ends of the upper-front fence tube and the lower-front fence tube are pivotally connected to the front wheel holder respectively, rear ends of the upper-front fence tube and the lower-front fence tube are pivotally connected to front ends of the upper folding joint and the lower folding joint corresponding thereto respectively, the rear ends of the upper-back fence tube and the lower-back fence tube are pivotally connected to the rear wheel holder respectively, and the front ends of the upper-back fence tube and the lower-back fence tube are pivotally connected to the rear ends of the upper folding joint and the lower folding joint corresponding thereto respectively;* The front ends of the

upper-front fence tube and the lower-front fence tube of the Joymor stroller are pivotally connected to the front-wheel holder respectively, and the rear ends of the upper-front fence tube and the lower-front fence tube are pivotally connected to the front ends of the upper folding joint and the lower folding joint correspondent respectively, and the rear ends of the upper-back fence tube and lower-back fence tube are pivotally connected to the rear-wheel holder respectively, and the front ends of the upper back fence tube and the lower back fence tube are pivotally connected to the rear ends of the upper folding joint and the lower folding joint corresponding thereto respectively of the Joymor stroller as indicated below and using photographs from the manual for the Joymor stroller:



65.   At least as early as the filing and service of this Complaint, Defendants are also indirectly infringing the '588 patent.

66.    Defendants have actual knowledge of Wonderfold's rights in the '588 patent and details of Defendants' infringement of the '588 patent based on at least the filing and service of this Complaint.

67.    Defendants manufacture, use, import, offer for sale, and/or sell the Joymor stroller with knowledge of or willful blindness to the fact that its actions will induce Defendants' retail partners and end users to infringe the '588 patent by at least using and/or selling the Joymor stroller in violation of 35 U.S.C. § 271.

68.    Defendants' infringement has caused, and is continuing to cause, damage and irreparable injury to Wonderfold, and Wonderfold will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

69.    Wonderfold is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT 2: INFRINGEMENT OF U.S. PATENT NO. D955,301

70.    Wonderfold incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

71.    Defendants have engaged in a pattern of conduct demonstrating: the objectively high likelihood that Defendants' actions constitute infringement of the '301 patent and that the '301 patent is valid and enforceable; and that this objectively-defined risk was so obvious that Defendants knew or should have known it.

72.    Defendants have infringed and continues to infringe the '301 patent by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of California and within this District, products infringing the ornamental design covered by the '301 patent in violation of 35 U.S.C. § 271, including, but not limited to Defendants' Joymor products.

73.     Defendants infringe the '301 patent because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser gives, the stroller design of the '301 patent and the stroller design of the strollers of Defendants are substantially similar, the resemblance being such as to deceive such an ordinary observer, inducing him to purchase one supposing it to be the other.

74.     Defendants' acts relating to the '301 patent were undertaken without authority, permission, or license from Wonderfold and such acts violate are in violation of 35 U.S.C. § 271.

75.     Defendants' infringement has damaged and continues to damage and injure Wonderfold. The injury to Wonderfold is irreparable and will continue unless and until Defendants are enjoined from further infringement.

76.     Wonderfold is entitled to a complete accounting of all revenue and profits derived by Defendants from the unlawful conduct alleged herein, including without limitation, Defendants' total profit pursuant to 35 U.S.C. § 289.

77.     Defendants have engaged and are in willful and deliberate infringement of the '588 patent and the '301 patent. Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of attorney's fees pursuant to 35 U.S.C. § 285.

78.     Wonderfold is entitled to damages and a permanent injunction preventing Defendants from further infringement of the '301 patent.

## COUNT 3: INFRINGEMENT OF TRADE DRESS/UNFAIR COMPETITION – LANHAM ACT

79.     Wonderfold incorporates by reference and re-alleges all the foregoing

80.   paragraphs of this Complaint as if fully set forth herein.Wonderfold's strollers have acquired distinction and secondary meaning in the marketplace that is not functional.

81.   Wonderfold's promotion of its strollers have resulted in Wonderfold acquiring significant goodwill and legally protected rights in the Wonderfold stroller's trade dress.

82.   As described above, Defendants, manufacture, market, and/or sell strollers that are substantially or confusingly similar to the Wonderfold strollers, incorporating the Two side-by-side vertical rectangle-shaped designs on the left and right side of the stroller separated by a thin solid upright rectangle design, see through paneling on the vertical rectangle-shaped designs on the left and right side of the stroller, a flap with a vertical rectangular shape with rounded corners on the lower portion of the flap that hangs over the side of the stroller, a design with three panels of vertical rectangles with the outer two vertical rectangles in see through material and the middle pattern in solid fabric on the lower portion of a removable basket on the back of the stroller, a crescent shaped flap over the front pocket of the stroller, an overhead canopy with distinctive rounded edges, a distinctive three-ridge design on the clips for accessories, a distinctive shape when the stroller is folded and with the center flap with a distinctive rectangular design positioned to hang over the edge of the uppermost portion of the stroller, a distinctive shape of the side view of a diamond ring on the fastener clip for the five point harness of the child safety belt, and a distinctive design containing a multiplicity of interconnecting boat-shapes on the tread of the wheels, two distinctive curves near the insertion point on the folding latch, handlebar button where the outer facing cover over the button is shaped in a distinctive square where the lines of the square curve outward and the button is on the inside of the handlebar.

83.    Pursuant to 15 U.S.C. § 1125(a), a non-registered trademark owner may be granted injunctive relief to prevent or restrain infringement of its well-known mark and may also seek an award of damages, disgorgement of profits, and attorney's fees as a result of trademark infringement.

84.    Defendants' actions, including their use in commerce of marks and trade dress that are substantially similar or identical to Wonderfold's mark and trade dress, has caused or is likely to cause confusion, mistake, deception of consumers, or misunderstanding as to the source, origin, approval or sponsorship of Defendants' goods.

85.    Defendants' actions, therefore, constitute trade dress and unfair competition in violation of the Lanham Act, § 1125(a).

86.    Defendants knew of Wonderfold's trade dress prior to marketing and selling the infringing Joymor stroller. Accordingly, Defendants' conduct is intentional and willful.

87.    Defendants continue to use confusingly similar marks and trade dress in commerce. Upon information and belief, Defendants are willfully offering for sale and selling products that infringe upon Wonderfold's mark and trade dress in order to benefit from Wonderfold's goodwill and reputation, and to falsely create an association between Defendants' and Wonderfold's products.

88.    Wonderfold has been and will continue to be irreparably harmed and injured by Defendants' actions, and Wonderfold lack an adequate remedy at law. Defendants therefore should be enjoined from using Wonderfold's mark and trade dress.

89.    Wonderfold is also entitled to recover Defendants' profits in providing its goods using Wonderfold's mark and trade dress, as well as all other damages sustained by Wonderfold due to Defendants' use of goods using marks

and trade dress identical or confusingly similar to Wonderfold's mark and trade dress, and costs of suit.

90.   Because this is an exceptional case, involving willful misconduct by Defendants, Wonderfold is entitled to recover treble damages or Defendants' profits, whichever is greater, and reasonable attorney's fees.

## COUNT 4: UNFAIR COMPETITION – Cal. Bus. & Prof. Code § 17200, et seq.

91.   Wonderfold repeats and realleges the foregoing allegations as if set forth in full herein.

92.   As described herein, the actions of Defendants constitute unlawful business practices under California Business & Professions Code 17200, et seq.

93.   Wonderfold has a valid and legally protectible right in the Wonderfold stroller, whose trade dress is inherently distinctive and through Wonderfold's continuous use and efforts has become associated with Wonderfold.

94.   The above-described acts further constitute business acts that violate 15 U.S.C. § 1125(a) and 35 U.S.C. § 271, and are therefore unlawful.

95.   Furthermore, the above-described acts and practices by Defendants have and are likely to continue to confuse, mislead or deceive the general public and therefore constitute unfair and fraudulent business practices in violation of California Business & Professions Code §§ 17200, et seq.

96.   As a direct and proximate result of Defendants' wrongful conduct, Wonderfold has suffered actual injury and has lost money and profits, as well as suffered injury to its reputation and goodwill.

97.   Such harm will continue unless Defendants' acts are enjoined by the Court. Wonderfold has no adequate remedy at law.   Defendants, therefore, should be enjoined from continuing the practices described above.

## COUNT 5: COMMON LAW UNFAIR COMPETITION

98.    Wonderfold repeats and realleges the foregoing allegations as if set forth in full herein.

99.    Wonderfold's mark, trade dress and the patented design of products associated therewith have been highly successful and Wonderfold has developed a substantial reputation and goodwill in the marketplace.

100.  Upon information and belief, Defendants have misappropriated Wonderfold's efforts and have exploited Wonderfold's mark, trade dress, and the patented design of products associated therewith, as well as Wonderfold's goodwill and reputation.

101.   The above-described actions constitute unfair competition.

102.   As a direct and proximate result of Defendants' wrongful conduct, Wonderfold has and will continue to be damaged.

103.   Such harm will continue unless Defendants' acts are enjoined by the Court. Wonderfold has no adequate remedy at law.   Defendants, therefore, should be enjoined from continuing the practices described above.

104.  Upon information and belief, Defendants have acted willfully, intentionally and maliciously, such that Wonderfold is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Wonderfold respectfully requests:

A.    That judgment be entered that Defendants have infringed the '588 patent, directly, and indirectly, literally or under the doctrine of equivalents;

B.    That judgment be entered in favor of Wonderfold on its claim that Defendants have infringed the '301 patent, directly, and indirectly, literally or under the doctrine of equivalents;

C.      That judgment be entered in favor of Wonderfold on its claim that Defendants have committed trade dress infringement and unfair competition under the Lanham Act.

D.      That judgment be entered in favor of Wonderfold on its claim that Defendants have committed unfair competition or business practices under California Business & Professions Act § 1700, et seq.

E.      That judgment be entered in favor of Wonderfold on its claim that Defendants have committed common law unfair competition.

F.      Entering judgment that Defendants account for and pay to Wonderfold all damages to and costs incurred because of Defendants' infringing activities and other conduct complained of herein.

G.      That, in accordance with 35 U.S.C. § 283, Defendants and all affiliates, employees, agents, officers, directors, attorneys, successors and assigns, and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from:

        1.      making, importing, using, selling, and offering to sell infringing products practicing the '588 patent and from otherwise infringing, contributing to infringement, and actively inducing infringement of the '588 patent;

        2.      making, importing, using, selling, and offering to sell infringing products practicing the '301 patent and from otherwise infringing, contributing to infringement, and actively inducing infringement of the '301 patent;

        3.      making, importing, using, selling, and offering to sell products infringing upon Wonderfold's mark or trade dress, or otherwise unfairly competing with Wonderfold, or, in the alternative, awarding Wonderfold post-judgment royalties for future infringement or unfair competition.

4.      holding out in any manner whatsoever that Defendants or Defendants' products or services such as the Joymor strollers, are in any way sponsored, approved, sourced, certified, affiliated, connected, or associated with Wonderfold, or Wonderfold's products and services; and

5.      making, importing, using, selling, and offering to sell the Joymor stroller;

H.      A judgment and order that Defendants deliver to Wonderfold for destruction all Joymor strollers, molds, sales literature, customer literature, and other trade pieces used in the infringement of the '588 patent and/or the '301 patent, and/or the Wonderfold mark and/or trade dress;

I.      A judgment and order that Defendants make an accounting to Wonderfold and pay over to Wonderfold:

1.      the extent of Defendants' total profit and revenue realized and derived from its infringement of the '588 patent,'301 patent, and/or Wonderfold's mark and/or trade dress, and actual damage to Wonderfold in an amount not less than a reasonable royalty for Defendants' infringement;

J.      An award of damages sufficient to compensate Wonderfold for Defendants' infringement under 35 U.S.C. § 284, and the Lanham Act;

K.      Awarding Wonderfold actual damages, in an amount to be proven at trial, and in no event less than a reasonable royalty.

L.      Awarding treble damages, as allowed by law.

M.      Awarding punitive damages, as allowed by law.

N.      That the case be found exceptional under 35 U.S.C. § 285 and that Wonderfold be awarded its attorney's fees;

O.      Costs and expenses in this action;

P.      An award of prejudgment and post-judgment interest; and

Q.    Such other and further relief as the Court may deem just and proper.

1

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Wonderfold respectfully demands a trial by jury on all issues triable by jury.

DATED: April 21, 2024                    LAW OFFICES OF NIRIA M. ARVIZU

By  / Niria M. Arvizu /
Niria M. Arvizu
Attorney for Plaintiff,
WONDERFOLD CORPORATION